NOT DESIGNATED FOR PUBLICATION

No. 121,020

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARY CHRISTINE SCHIERKOLK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON GEIER, judge. Opinion filed June 5, 2020. Affirmed.

*Dionne A.L. Carter*, of Carter Law Offices, of Topeka, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

PER CURIAM: Mary Schierkolk appeals her conviction of two counts of violating a protection order. She claims that there wasn't enough evidence to convict her.

But the State presented evidence that after a court order had been entered prohibiting her from contacting Stephen Ames, Schierkolk made calls and sent text messages to him on two different days. Ames testified that he received the messages from a number Schierkolk admitted was hers, and the trial judge who heard the testimony found Ames' testimony credible. We find that the evidence was sufficient to prove the two charges beyond a reasonable doubt, and we therefore affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Stephen Ames sought a protection-from-abuse order against Schierkolk. In December 2016, the court entered a final protection order against Schierkolk; she was served with the final order on December 27, 2016. The final protection-from-abuse order required that Schierkolk refrain from contacting Ames either "directly or indirectly."

But on July 20, 2017, Ames received a text message from a number he recognized as one of Schierkolk's. The message said, "Sorry." On July 23, he received another text message from the same phone number. The text message said, "[H]ey, I was wond [*sic*] if mom could get her rings back. I think she is moving to Kansas City." Ames then filed a police report with Deputy Ashley Previty of the Shawnee County Sheriff's Office, alleging that Schierkolk violated the final protection-from-abuse order.

Based on these two text messages, the State filed charges against Schierkolk on November 20, 2017, for two counts of violation of a protection order, class A person misdemeanors, in violation of K.S.A. 2017 Supp. 21-5924(a)(1). On February 13, 2019, the parties appeared for a bench trial. The State called two witnesses: Ames and Deputy Previty.

Ames testified that he was not aware of the dates but stated he believed Schierkolk had contacted him after the protection order had been served on Schierkolk. He testified that he received phone calls and texts from Schierkolk and based on that, he filed a police report in July 2017.

Ames said that Schierkolk had contacted him using four different phone numbers, all of which he saved in his phone as either "Harley Barbie" or "Psycho." He could not recall any of the phone numbers from memory, but he knew Schierkolk used these numbers to contact him. He said that when he received the text messages on July 20 and

2

23, 2017, the name "Harley Barbie" appeared on his phone in the text heading. Ames said that one of the texts asked Ames whether he had Schierkolk's or Schierkolk's mother's rings. Ames said he did not have any rings in his possession that belonged to Schierkolk or Schierkolk's mother. When asked if he believed the text message came from Schierkolk's phone, Ames testified, "Yes. It's [Schierkolk's] phone."

Deputy Previty testified that she took a report from Ames in July 2017. Ames told Deputy Previty that he had received phone calls and text messages from Schierkolk in violation of the protection-from-abuse order. Ames then provided Deputy Previty with three different phone numbers—each belonging to Schierkolk—that he had saved in his mobile phone. Deputy Previty testified that she conducted a record search in the department's New World Record System and determined that one of the numbers Ames provided belonged to Schierkolk.

Schierkolk took the stand and denied contacting Ames. She said that she had been in an abusive relationship with Ames, and she would never contact Ames because she was afraid of him. She said that her son had taken her phone and contacted Ames on his own. Schierkolk said that the reason her son contacted Ames was to discuss removing Ames' name from the title on Schierkolk's vehicle. She said she did not direct her son to contact Ames. While she admitted the number Deputy Previty had confirmed in the police department system belonged to her, Schierkolk said that she did not start using that number until late July 2017 or early August 2017, after Ames had received the text messages. Instead, she said that she had been using a friend's phone as of July 20 and 23, 2017, because she did not have a phone.

The district court took judicial notice of the final protection order and the December 27, 2016 return of service. After a brief recess, the court found Schierkolk guilty of two counts of violation of a protection order. In making its finding, the court determined that the State met its burden in proving the elements of each count beyond a

3

reasonable doubt. The court noted that the evidence showed there was no dispute that Schierkolk had owned or had control of the phone with the number that Ames received text messages from on July 20 and 23, 2017, and that these messages violated the protection order. The district court sentenced Schierkolk to supervised probation for 6 months with an underlying jail sentence of 30 days that would be served if Schierkolk didn't successfully complete her probation. Schierkolk has appealed her convictions to this court.

ANALYSIS

When the sufficiency of the evidence is challenged in a criminal case, we must determine whether, after reviewing all the evidence in a light most favorable to the prosecution (since the fact-finder found in its favor), we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or determine witness credibility. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Circumstantial evidence is sufficient for conviction if it provides a reasonable basis from which the fact-finder may reasonably infer each element of the offense. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). It is only in rare cases in which trial testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Ramirez*, 50 Kan. App. 2d 922, 936, 334 P.3d 324 (2014).

Schierkolk argues that a rational fact-finder could not have found her guilty beyond a reasonable doubt for two reasons: (1) the State failed to produce any direct evidence that Schierkolk knowingly or intentionally contacted Ames, and (2) the district court erred in placing more emphasis on Ames' testimony than on Schierkolk's. We will consider each argument separately.

4

First, Schierkolk contends that the State failed to produce direct evidence showing that Schierkolk knowingly or intentionally contacted Ames. She argues that the evidence showing she made several calls to Ames and that she sent text messages to Ames on July 20 and 23, 2017 was too speculative. To support this claim, Schierkolk notes that: (1) Ames testified that he had received phone calls from Schierkolk, but Deputy Previty testified that the phone calls had come from a restricted number; (2) Ames could not remember the specific phone number from which the text messages came; (3) Ames' testimony was inconsistent in some respects with the information he provided to Deputy Previty when he filed his police report; and (4) the text message regarding Schierkolk's or Schierkolk's mother's rings did not sound as if it would have come directly from Schierkolk. Schierkolk contends that without some additional corroborating evidence, such as pictures of the text messages or phone records, the State failed to present sufficient evidence to meet its burden.

And what was the State required to prove? Under K.S.A. 2019 Supp. 21-5924(a)(1), the State had to establish that Schierkolk knowingly violated a protection-from-abuse order issued pursuant to K.S.A. 60-3105, 60-3106, or 60-3107. A person acts "knowingly" when that person is aware of the nature of such person's conduct or that the circumstances exist and when that person is aware that his or her conduct is reasonably certain to cause the result. K.S.A. 2019 Supp. 21-5202(i). The State may use circumstantial evidence and the logical inferences properly drawn from that evidence to support a conviction. See *Chandler*, 307 Kan. at 669.

Here, the State provided enough evidence to support Schierkolk's conviction. As the State correctly notes in its brief, that some of the calls may have come from a restricted number wouldn't negate the charges even if Schierkolk didn't have access to that number. The violations of the protection order the State charged Schierkolk with were not based on these alleged calls to Ames, and the district court did not cite to those calls in making its findings. Rather, the complaint and the district court's ruling focused

5

solely on evidence presented regarding the text messages sent to Ames from Schierkolk's phone on July 20 and 23, 2017.

The State also had to prove that a protection order was in place and that Schierkolk knew about it. The court took judicial notice of the order, and it was served on Schierkolk on December 27, 2016. The order prohibited Schierkolk from directly or indirectly contacting Ames. When Ames filed his police report with Deputy Previty, he stated he received text messages on July 20 and 23 from a number he had recorded as one of Schierkolk's. He gave that number to Deputy Previty, and she confirmed that it belonged to Schierkolk. Schierkolk also testified that the number belonged to her, a fact that she never denied.

While Schierkolk testified that her son sent the text messages, the district court found Schierkolk guilty beyond a reasonable doubt after it had heard the witnesses' testimony and had observed the witnesses' demeanor. The district court found that Schierkolk never disputed owning or having control of the number and that because the text messages originated from that number, Schierkolk violated the final protection-from-abuse order. We do not reweigh the evidence presented at the district court level. 307 Kan. at 668. The circumstantial evidence established at trial provides a basis from which a reasonable fact-finder could infer that Schierkolk knowingly contacted Ames in violation of the final protection-from-abuse order. See *Logsdon*, 304 Kan. at 25. When reviewing this evidence in a light most favorable to the State, we conclude that a rational fact-finder could have found Schierkolk guilty beyond a reasonable doubt. See *Chandler*, 307 Kan. at 668.

Second, Schierkolk argues that the district court should have placed more emphasis on Schierkolk's testimony rather than on Ames' testimony. But we can't second-guess the district court on this point—that court, not ours, makes the witness-credibility judgments. 307 Kan. at 668. Nothing in the record suggests that Ames' or Deputy

6

Previty's testimony was so incredible or improbable that we have the option to disbelieve it after the trial court has accepted it. See *State v. Sitlington*, 291 Kan. 458, 465, 241 P.3d 1003 (2010).

We affirm the district court's judgment.